**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| CLARENCE LUKER, AIS # 276254 | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION NO.11-00341-CB-B |
| | * |
| NICOLE STEELE[1], | * |
| | * |
|     Defendant. | * |

## REPORT AND RECOMMENDATION

Plaintiff Clarence Luker, an Alabama prison inmate proceeding pro se and in forma pauperis, filed the instant action under 42 U.S.C. § 1983. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendant's Motion for Summary Judgment (Docs. 55, 91, 109) [2]. Upon review, the undersigned finds that the motion has

---

[1] In his original complaint (Doc. 1), Luker named Escambia County Detention Center and Peggy Still as defendants. Later, Luker filed a motion to amend his complaint in order to add Nicole Steele as the correct Defendant, and to dismiss his claims against the Escambia County Detention Center and Peggy Still. (Doc. 25). In an order dated February 27, 2012, Luker's motion was granted; thus, Nicole Steele is the sole remaining Defendant. (Doc. 34).

[2] On October 10, 2012, the undersigned converted Defendant's Special Report, sworn affidavit, and Answer into a Motion for Summary Judgment. (Doc. 110). The parties were provided notice

been fully briefed and that no evidentiary hearing is necessary as the record is fully developed.   For the reasons stated herein, the undersigned recommends that Defendant Nicole Steele's Motion for Summary Judgment be **GRANTED** and that this action be dismissed with prejudice.

### I. BACKGROUND FACTS

From its review of the record, the Court summarizes the allegations that are material to the issues addressed in this Report and Recommendation.   While incarcerated at the Escambia County Detention Center ("Escambia") on June 14, 2010, Luker was attacked with a broomstick by George Vivens[3], a fellow inmate. (Doc. 1 at 4; Doc. 20-1 at 2; Doc. 109-1 at 1).   The attack occurred while Luker was out of his cell for his scheduled "time out" (Id.).   According to Escambia's policies, inmates are periodically let out of their cells for one hour per day in order to engage in activities such as showers, phone calls, etc. (See Id.).   At the time of the attack, inmate Vivens was out of his cell on the second floor sweeping and mopping, while Luker was on the first floor at the bottom of the stairs.   The time

---

and afforded over thirty days in which to file a response in support of or in opposition to the motion for summary judgment.

[3] Luker refers to the inmate as "George Vivian". (Doc. 1 at 4). Defendant Steele refers to him as "George Vivens". (Doc. 20-1; incident report).

for Inmate Vivens to be out of his cell had expired; Defendant
Nicole Steele, the corrections officer on duty, was preparing to
return inmate Vivens to his cell. (Doc. 109-1 at 1).  According
to Luker, immediately before the attack, he was holding the
dustpan for inmate Vivens when, without warning or provocation,
inmate Vivens began attacking him with the broom.  Luker
contends that inmate Vivens hit him in the head a couple of
times", and stabbed him in his left land. (Doc. 1 at 4).
Security footage from the facility captured the attack and
reflects that the attack lasted no longer than 12 seconds. (See
Docs. 101-5 – 101-17)

Following the attack, Plaintiff was seen by the nurse at
the facility. (Doc. 109-1 at 2).  The medical report reflects
that Luker suffered a 2-centimeter laceration in his left index
finger and had to have 2-3 sutures. (Doc. 20-2 at 2).  Luker
acknowledges that he did, in fact, receive the "stichs" (sic)
but, claims that "they never x-rayed my hand and my left hand
has grown back crooked." (Doc. 1 at 4).  The medical records
reflect that Luker's left hand was x-rayed on February 11, 2011,
and that the results were essentially normal. (Doc. 106-1 at
76).  The radiology report provides, in pertinent part: "All the
carpal joints, metacarpophalangeal joints, proximal and distal
interphalangeal joints are well aligned.  No fracture or

dislocation is seen.   No appreciable soft tissue swelling is seen.  Conclusion: Normal left hand." (<u>Id.</u>).[4]

## II. <u>PROCEDURAL ASPECTS OF THE CASE</u>

As noted <u>supra</u>, Luker's sole remaining claim in this case is his assertion that Defendant Nicole Steele violated his Eighth Amendment rights. (Doc. 105).   Specifically, Luker alleges that Steele "wasn't doing there (sic) job properly (security breach)" (Doc. 1 at 5).   In support thereof, Luker asserts that "the guy George Vivian (sic) wasn't suppose to be out of his cell [] during the time [] when my cell [] had been opened." (<u>Id.</u>).

In her Special Report (Docs. 91, 109) and affidavit filed on October 8, 2012 (Doc. 109-1), Defendant Steele denies that she was deliberately indifferent to Luker.   Defendant Steele acknowledges that Luker was attacked by inmate Vivens, but asserts that before the attack, she had no notice of any

---

[4] In his complaint, Luker also alleges that "I also suffered while in the Detention Center and they wouldn't do nothing about it." (Doc. 1 at 4).   Although Luker makes this assertion, he fails to provide facts, names, dates or identifying information to support this assertion.   To the extent that Luker is referring to the medical treatment that he received while in the Escambia facility, those claims were addressed in the Court's order dated February 27, 2012. (Doc. 34).

problems between Luker and inmate Vivens, and had no reason to anticipate the attack.   Defendant Steele asserts as follows:

> I did not know at this time of anything that had occurred or was about to occur between these two inmates.   I did not know of any threats that had been made by or between the two of them.   I did not know of anything that would have indicated to me or anyone else that a fight or altercation between these two inmates was imminent or about to occur.   I observed these two inmates say a few words between themselves, and then without warning[,] inmate Vivens started swinging the broomstick hitting inmate Luker on the head a couple of times.   Inmate Luker placed his hands in front of his face and ran back into his cell.   The altercation between these two inmates occurred without notice or warning to me, and lasted only a few seconds.
>
> [Doc. 109-1 at 1, 2].

Luker, on September 20, 2012, filed a response to Defendant's Special Report and Answer in which he articulated his claim as a violation of his Eighth Amendments rights. (Doc. 105).   As noted supra, the Court entered an order converting Defendant's Special Report and Answer into to a Motion for Summary Judgment, and afforded the parties an opportunity to respond. (Doc. 110).   On March 7, 2013, and March 25, 2013, Luker filed objections to Defendant's Motion for Summary Judgment. (Docs. 115, 117).   In his objections, Luker reiterates his claim that he was assaulted and that his left hand is injured. (Id.).   In addition, Luker asserts that he requested to transfer to a different unit in the

prison following the attack. (Id.). Defendant's motion and Luker's responses thereto are now before the Court.

### III. **SUMMARY JUDGMENT STANDARD**

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grants this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all reasonable inferences in favor of the party opposing summary judgment . . . not to make all possible inferences in the nonmoving party's favor." Torjagbo v. United States, 285 Fed. App'x 615, 619 (11th Cir. 2008) (emphasis in original). Rule 56(e)(2) states that:

> [w]hen a motion for summary judgment is properly
> made and supported, an opposing party may not

> rely merely on allegations or denials in its own
> pleading; rather, its response must – by
> affidavits or as otherwise provided in this rule
> – set out specific facts showing a genuine issue
> for trial. If the opposing party does not so
> respond, summary judgment should, if
> appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed
> facts and disputed matters of professional
> judgment. In respect to the latter, our
> inferences must accord deference to the views of
> prison authorities. Unless a prisoner can point
> to sufficient evidence regarding such issues of

7

> judgment to allow him to prevail on the merits,
> he cannot prevail at the summary judgment stage.

Beard v. Banks, 548 U.S. 521, 529-30, 126 S. Ct. 2572, 165 L.
Ed. 2d 697 (2006) (internal citation omitted).  "Where the
record taken as a whole could not lead a rational trier of fact
to find for the nonmoving party, there is 'no genuine issue for
trial.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 67
L. Ed. 2d 686 (2007) (quoting Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.
Ed. 2d 538 (1986).

**IV. DISCUSSION**

As noted above, Luker seeks redress pursuant to 42 U.S.C. §
1983 for an Eighth Amendment violation for an attack by a fellow
inmate. (Docs. 1, 105).   Specifically, Luker alleges that
Defendant Steele violated his Eighth Amendment rights by "there
being injury involved in this case and it being caught on video
(camera) . . . and having suffered pain and permanent injury,
and the defendant [] trying to cover up these broken laws."
(Doc. 105 at 4).  Defendant denies that she violated Plaintiff's
constitutional rights and further denies that she was
deliberately indifferent.  Defendant also asserts the defenses
of contributory negligence, failure to state a claim, immunity,
and qualified immunity. (Doc. 55 at 2).

8

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

In addressing Luker's claim brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed . . ." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989). The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme

Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Luker must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman*,* 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter*,* 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v. Bennett*,* 689 F.2d 1370, 1389-90 (11th Cir. 1982)." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which

10

> inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca, 995 F.2d at 1535.   This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 298)).   The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)).   This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

11

In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted).   In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.   The Supreme Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id., 511 U.S. at 839-40.   There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." Id., 511 U.S. at 838. It is not enough that a plaintiff proves that the defendant should have known of the risk, but did not, as actual subjective knowledge is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer,

12

511 U.S. at 844-45 (citations omitted).  "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

Finally, Plaintiff must establish an affirmative causal connection between the Defendant's actions, orders, customs, policies, or breaches of statutory duty and a deprivation of his constitutional rights in order to state a claim upon which relief may be granted. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation; by proving that a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights; or by proving that a supervisory defendant breached a duty imposed by state or local law, and this breach caused Plaintiff's constitutional injury. Id.

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

### Eighth Amendment Claim

In his Complaint, Luker alleges that Defendant Steele violated his Eighth Amendment right to be free from cruel and

13

unusual punishment by not doing her job properly and allowing inmate Vivians to be out of his cell pass his proscribed time. (Docs. 1, 105).  However, a searching review of the record fails to unearth any evidence that shows that anyone, including Luker or Defendant Steele, had any foreknowledge that inmate Vivens posed a threat to Luker or anyone else.  Indeed, Luker admits that "[P]laintiff didn't know George Vivian (sic) who hit him with Broom and Broke it, then stabbed him, there had never been words between them except to speak kindly, no harsh words never passed, he got mad over God only knows why." (Doc. 28 at 4).

With respect to the objective element of Plaintiff's Eighth Amendment claim, he must show that the conditions under which he was incarcerated presented "a substantial risk of serious harm" to him. <u>Farmer</u>, 511 U.S. at 834.  It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm. . . ." <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1320 (11th Cir. 2005) ("[C]onfinement in a prison where violence and terror reign is actionable.").  On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." <u>Purcell</u>, 400 F.3d at 1320 (citations omitted) (granting summary judgment for sheriff and jail administrator where Plaintiff failed to present evidence

14

that conditions at the jail rose to the level of a constitutional violation, despite the fact that inmates were allowed to keep money in their cells; inmates were allowed to play cards and gamble; the physical layout of the jail hindered guards from seeing into certain cells at night from the control tower; and that there was a history of isolated, inmate-on-inmate fights).

"[A] prison custodian is not the guarantor of a prisoner's safety." Id., 400 F.3d at 1321 (citations omitted). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." Id., 511 U.S. at 844.

Luker has failed to point to any evidence that establishes that his conditions were unreasonable and has further failed to proffer evidence of any other acts of violence by inmates. Against this backdrop of facts, Luker has failed to establish that the conditions under which he was incarcerated subjected him to "a substantial risk of serious harm." Id., 511 U.S. at 834. Accordingly, he has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming _arguendo_ that Luker's evidence did satisfy the objective element of his Eighth Amendment claim, he must also come forth with sufficient proof that Defendant Steele was subjectively, deliberately indifferent to the risk of serious harm to him.  To meet this element, Luker must prove that Defendant actually knew that a substantial risk of serious harm existed, and that she "knowingly or recklessly" declined to take action to prevent that harm. _LaMarca_, 995 F.2d at 1535.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." _Farmer_, 511 U.S. at 838.  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" _Hale_, 50 F.3d at 1583 (quoting _Farmer_, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" _Id._ (quoting _Farmer_, 511 U.S. at 842).

In this case, it is undisputed that neither Luker nor Defendant Steele knew or had reason to know of the potential risk of harm to Plaintiff.  In fact, the only facts that Luker proffers in support of his claim is his assertion that other

16

prison officials should be held accountable because they knew that Plaintiff and inmate Vivens were formerly housed together in Unit #4 and they were aware that Plaintiff had requested a transfer from Unit #4 because of "stealing incidents" which occurred in Unit #4. (Doc. 78 at 1). Mere incidents of stealing are insufficient to alert Defendant to a potential attack, particularly given the fact that the alleged incidents did not involve Luker and inmate Vivens, nor did the incidents involve any physical altercations or threats between Luker and inmate Vivens. In fact, Luker admits that his prior communications with inmate Vivens had been civil. According to Luker, "there had never been words between them except to speak kindly, no harsh words never passed". (Doc. 24 at 4).

Accordingly, Luker has failed to proffer any evidence that demonstrate that Defendant Steele was deliberately indifferent to the risk of harm that inmate Vivens posed to Plaintiff. There is no evidence that inmate Vivens had ever directed any threats at Plaintiff, or that Defendant Steele was ever made aware of any such threats. Thus, the record is devoid of any evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past". Farmer, 511 U.S. at 842. Rather, the evidence reflects that the June 14, 2010 attack on Luker was

an isolated occurrence.  Additionally, no one, including Luker, had any reason to suspect that he was in danger of being attacked.  Accordingly, the undersigned finds that Luker has failed to proffer facts from which a jury could reasonably find that Defendant Steele knew that a substantial risk of serious harm existed, and she "knowingly or recklessly" declined to take action to prevent a known harm. LaMarca, 995 F.2d at 1535.

**V. CONCLUSION**

Based on the foregoing, the Court concludes that Defendant Steele is entitled to summary judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** because Plaintiff has failed to state a claim upon which relief can be granted and that Plaintiff's Complaint be **DISMISSED** with prejudice.[5]

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28

---

[5] Imbedded within two of Plaintiff's many filings with the Court (Docs. 105, 112) is a request that the Court grant summary judgment in Luker's favor. (Id.).  In light of the undersigned's recommendation that Luker's claim be dismissed, his motion for summary judgment is likewise due to be **DENIED**.

18

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **15th** day of **July, 2013.**

_____
**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
